IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| A.C. DELLOVADE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CIV-19-163-C |
| | ) | |
| WALSH FEDERAL/ALBERICI JOINT | ) | |
| VENTURE, WALSH FEDERAL, LLC; | ) | |
| and ALBERICI CONSTRUCTORS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Now before the Court is Defendants' Motion to Stay Litigation Pending Arbitration (Dkt. No. 24). Plaintiff has filed its Response (Dkt. No. 27), and Defendants have submitted their Reply (Dkt. No. 28). Both parties have submitted additional briefing as well. (Dkt Nos. 33, 36.) The motion is now at issue.

I.    Background

On September 14, 2017, Plaintiff and Defendants agreed to a subcontract regarding a construction project on Tinker Air Force Base in Oklahoma City. (Dkt. No. 1, pp. 2-3.) The subcontract required Plaintiff to "furnish and install certain metal wall panels, fabricated panel assemblies, roof systems and related items for the Project in exchange for payment from" Defendants. (Id. at 3.) According to Plaintiff, it has fully performed its work as required under the subcontract and has properly billed Defendants for this work, but has yet to receive payment from Defendants. (Id. at 3.) As a result, Plaintiff seeks

relief from this Court, alleging, *inter alia,* that Defendants breached the subcontract. (Id. at 4-9.)

Defendants now move the Court to stay this case and submit it for arbitration proceedings. In support, it relies on the arbitration provision within the subcontract:

> **11.2 Arbitration**. *Any controversy or claim of Contractor against Subcontractor or Subcontractor against Contractor or its surety pertaining to the Project, shall, at the option of Contractor or Contractor's surety and at any time, be resolved by arbitration pursuant to rules determined by Contractor.* The Contractor and Subcontractor agree to equally split the administrative costs, fees, and other similar expenses charged by the arbitrator or arbitration agency. Subcontractor irrevocably submits to the jurisdiction of the federal, state, or United States territory courts located in the state or United States territory of the Project for the purpose of proceedings with respect to the arbitration. At the Contractor's or its surety's option, the arbitration may be consolidated with any arbitration between the Contractor and Owner or other entity associated with the Project. Subcontractor waives to the fullest extent permitted by law any objection that they may now or may hereafter have to having arbitration proceedings conducted in the state or United States territory in which the Project is located, including any claim that it is an inconvenient forum for such arbitration or court proceedings. The award rendered by the arbitrator(s) shall be conclusive and binding upon the parties and shall be enforceable in any court of competent jurisdiction of any Contracting State pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (330 UNTS 3; 9 U.S.C. 201, et seq.).

(Dkt. No. 24-1, p. 15) (emphasis added).

Plaintiff objects to binding arbitration. In its view, this provision grants Defendants excessive authority regarding the arbitration proceedings—rendering the provision therefor unenforceable against Plaintiff. Defendants maintain that the provision mirrors other arbitration agreements that have been upheld by courts.

II.　　Standard

When a contract contains an arbitration clause, there generally is a "strong presumption" that the dispute is arbitrable. In re: Cox Enters., Inc. Set-top Cable Television Box Antitrust Litigation, 835 F.3d 1195, 1201 (10th Cir. 2016). This presumption, however, disappears where there is a dispute over whether a valid arbitration agreement exists. See Dumais v. Am. Golf Corp., 299 F.3d 1216, 1219 (10th Cir. 2002). At that point, the Court views the facts and all reasonable inferences in the light most favorable to the party opposing arbitration. See Ragab v. Howard, 841 F.3d 1134, 1139 (10th Cir. 2016).

When a party to an arbitration agreement challenges its validity, "the federal court must consider the challenge before ordering compliance with that agreement." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 71 (2010). In resolving such a challenge, federal courts may apply state law principles that govern the validity, revocability, and enforceability of contracts. Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996).

The Tenth Circuit has held "that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." Dumais, 299 F.3d at 1219. If there are sufficient restrictions on a party's right to modify or cancel the arbitration agreement, however, the agreement is not illusory and is enforceable. See Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470, 479 (10th Cir. 2006); see also Thompson v. Bar-S Foods Co., 2007 OK 75, 174 P.3d 567, 575 (arbitration agreement in personnel policy that the employer could unilaterally change without notice

3

lacked consideration and was illusory; citing Hardin "approvingly" as an accurate statement of Oklahoma law).

III. Analysis

In opposing arbitration, Plaintiff contends that (1) the arbitration provision here is unsupported by consideration and therefore illusory, (2) the arbitration provision is fundamentally unfair and unconscionable, and (3) Defendants are necessary parties to separate litigation before this Court. (See Dkt. No. 27; see also Dkt. No. 33, pp. 5-6.) Plaintiff therefore does not dispute the existence of the arbitration provision or the provision's applicability to its claims—it only challenges the provision's enforceability against it. Defendants maintain that the arbitration provision need not be supported by consideration and is nevertheless valid and enforceable.

a. The arbitration provision is not illusory.

First, the Court is not persuaded that the arbitration provision is illusory. In Plaintiff's view, because Oklahoma contract law generally applies to agreements to arbitrate, and because Oklahoma contract law requires a mutuality of obligation, the arbitration provision here—which retains for Defendants the sole discretion to invoke arbitration proceedings—lacks consideration and is therefore illusory. (Dkt. No. 27, pp. 2-4.) Plaintiff largely relies on Thompson to support this. (Id. at 4.) But the underlying contract in Thompson granted the employer the unilateral right to change the terms of the contract—including the arbitration agreement—without notice, and the court found that this rendered the underlying contract illusory. See 2007 OK 75, ¶ 25, 174 P.3d at 575. Here, however, neither the arbitration agreement nor the underlying subcontract reserves

this right for Defendants.[1] (See Dkt. No. 24-1, p. 15.) The Court thus finds that the arbitration provision is not illusory.

Additionally, the arbitration agreement here is only one provision of a larger contract. Where such circumstances are present, the issue is whether the underlying contract—not the arbitration provision—is supported by valid consideration.[2] See Thompson, 2007 OK 75, ¶ 33, 174 P.3d at 577 ("[T]he agreement to arbitrate must be *based on* a valid contract, supported by consideration.") (emphasis added). In other words, "[t]he Court finds no requirement of Oklahoma law that a contractual obligation to arbitrate disputes must be mutual." United States ex rel. Alamo Envtl., Inc. v. Cape Envtl. Mgmt., Inc., Case No. CIV-11-482-D, 2012 WL 6726571 at *3 (W.D. Okla. 2012). Accordingly, the Court finds that the arbitration provision here did not need independent consideration.

---

[1] Plaintiff spends much of its Supplemental Brief criticizing what it views as the lack of restrictions on Defendants' exclusive authority to amend or terminate the arbitration agreement. (See Dkt. No. 23, pp. 2-5.) But Plaintiff conflates Defendants' authority to invoke arbitration proceedings and choose the arbitration rules with its authority to alter the terms of the arbitration agreement. Indeed, elsewhere in the subcontract, the parties agreed that "any additions to and changes in this Agreement shall be in writing and signed by both parties." (Dkt. No. 24-1, p. 16.) The Court thus finds that Defendants have not retained the exclusive authority to modify or terminate the arbitration agreement, and it is therefore not illusory.

[2] Plaintiff only challenges the validity of the entire subcontract once—briefly noting in a footnote in its Supplemental Brief that "[u]nder Dumais and Hardin, the unfettered and unrestricted unilateral right to alter the arbitration provision at any time negates any otherwise valid consideration related to the Subcontract as a whole." (Dkt. No. 33, p. 2.) Put simply, though, neither Dumais nor Hardin supports this proposition. And, again, Plaintiff mischaracterizes the terms of the subcontract—it does not grant Defendants the unilateral right to amend the arbitration provision. (See Dkt. No. 24-1, p. 16.)

5

b. The arbitration agreement is neither manifestly unfair nor unconscionable.

The Court is similarly unpersuaded that the arbitration provision is fundamentally unfair or unconscionable. Here, Plaintiff largely relies on Ditto v. RE/MAX Preferred Props., Inc., 1993 OK CIV APP 151, 861 P.2d 1000. There, the court held that "such an arbitration clause as would exclude one of the parties from any voice in the selection of arbitrators cannot be enforced. Such a clause conflicts with our fundamental notions of fairness, and tends to defeat arbitration's ostensible goals of expeditious and equitable dispute resolution." Id., 1993 OK CIV APP 151 ¶ 19, 961 P.2d at 1004. Plaintiff reasons that the arbitration provision here would not only deprive it of any voice in the selection of arbitrators, but would also "deprive [Plaintiff] of any voice at all with respect to the entirety of procedural and substantive rules governing the arbitration." (Dkt. No. 27, p. 7.)

First, the arbitration provision here is silent on the selection of arbitrators. And while reasonable inferences at this stage are drawn in Plaintiff's favor, the inference that it will be wholly excluded from the selection of arbitrators based on this silence is unreasonable.[3] Further, as Defendants point out, their authority to invoke arbitration and select the rules is still governed by Oklahoma law, the Federal Arbitration Act, and the

---

[3] Parties are generally permitted to contractually agree upon an arbitrator selection method. Yet here, because the arbitration agreement is silent regarding the selection of arbitrators, the arbitration rules will control. See 97 Am. Jur. Trials 319 § 2 (2005) ("The adopted arbitral rules typically articulate a selection process. For instance, incorporating under the American Arbitration Association (AAA) Construction Arbitration Rules necessarily means that a proposed list of arbitrators will only include those with construction expertise, by reason of training or experience."). So even though Defendants may unilaterally determine these rules, the chosen rules must provide Plaintiff a voice in the arbitrator selection process. See Ditto, 1993 OK CIV APP 151, 861 P.2d 1000.

covenant of good faith and fair dealing.  (See Dkt. No. 28, p. 8.)  See also 9 U.S.C. § 10, Pre-Paid Legal Servs., Inc., v. Moore, Case No. CIV-13-215-SPS, 2015 WL 13158317 (E.D. Okla. Mar. 27, 2015) (Arbitration agreement held not illusory—even where one party could unilaterally amend it—in part because that party was still required to adhere to the covenant of good faith and fair dealing.).

Moreover, Oklahoma's unconscionability standard is particularly "onerous"—it takes into account "the circumstances existing at the time of making of the contract" as well as "the general commercial background and commercial needs of a particular case" in determining whether contractual terms are "so one-sided as to oppress or unfairly surprise one of the parties."  Barnes v. Helfenbein, 1976 OK 33, ¶ 23, 548 P.2d 1014, 1020; see also Been v. O.K. Indus., Inc., 495 F.3d 1217, 1236 (10th Cir. 2007) (describing Oklahoma's unconscionability standard as "onerous").  Here, Plaintiff has not alleged circumstances sufficient to satisfy this standard.  For instance, Plaintiff has not alleged that there was uneven bargaining power or that it lacked a meaningful choice in agreeing to the subcontract's terms.  Plaintiff agreed to a contractual provision that is undoubtedly favorable to Defendants, but this—without more—is insufficient to render the provision unconscionable.

  c. Related litigation does not warrant the denial of a stay.

In its Supplemental brief, Plaintiff advances one final argument in opposition to arbitration:  it has been sued—in separate litigation before this Court—by one of its suppliers in connection with this construction project because it has not paid its supplier under the contract.  (See Dkt. No. 33, pp. 5-6.)  Plaintiff alleges, though, that it hasn't paid

its supplier because it hasn't received payment from Defendants—rendering them necessary third parties to that litigation. (Id. at 6.) But the same day Plaintiff filed its Supplemental Brief, the plaintiff in the separate litigation amended its complaint to include Defendants. See United States ex rel. Metal Sales & Mfg. Corp. v. A.C. Dellovade, et al., Case No. CIV-19-373-C (Dkt. No. 12) (W.D. Okla. June 17, 2019). So the Court need not determine whether Defendants are necessary parties to that litigation. And, even so, the Court lacks the authority to deny arbitration proceedings when the requisite circumstances have been satisfied. See Wilson v. 59th St. LD Oklahoma City, LLC, Case No. CIV-16-1124-C, 2017 WL 722060 at *1 (W.D. Okla. February 23, 2017) ("[T]he Court has no discretion and must direct the parties to proceed to arbitration" if a valid arbitration agreement exists and encompasses the dispute.). As a result, the Court finds that Plaintiff has failed to present a valid reason to deny the stay request.

IV. Conclusion

For these reasons, Defendants' Motion to Stay Litigation Pending Arbitration (Dkt. No. 24) is GRANTED and this matter is hereby stayed pending arbitration. The Court orders the parties to arbitrate Plaintiff's claims in accordance with the terms set out in the arbitration provision. The Clerk of the Court is directed to administratively close this case in her records, without prejudice to any party's right to reopen, as appropriate.

IT IS SO ORDERED this 3rd day of July, 2019.

ROBIN J. CAUTHRON
United States District Judge